AO 9 Complaint

FILED
Sept 25 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____
DEPUTY

SEALED

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 11 2019
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| United States of America<br>v.<br>Steven Brown<br><br>Defendant(s) | )<br>)<br>) Case No.<br>) **3-19MJ814-BT**<br>) 1:19-m-600<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  January 15, 2019 - August 11, 2019  in the county of _____ in the
__Northern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(b)(2) | Brown conspired and agreed with others to commit the crime of access device fraud, in violation of Title 18, United States Code, § 1029(a)(3). |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Kennon Henderson, Special Agent
_____
Printed name and title

Sworn to before me and signed in my presence.

Date:  9·11·19

City and state:  Dallas, TX

_____
Judge's signature

Rebecca Rutheford, U.S. Magistrate Judge
_____
Printed name and title

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kennon Henderson, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the United States Secret Service. I am assigned currently to the Dallas Field Office, and I serve on a squad responsible for conducting investigations of complex financial crimes, including wire fraud, mail fraud, bank fraud, money laundering, and identity theft. I have been employed as a Special Agent for a year, and have been assigned to this squad for less than one year. I have received training in such areas as financial analysis, financial investigative methods and applications, as well as identity theft and fraud. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 3056, and I am an officer of the United States empowered to conduct investigations of, and make arrests for, numerous federal violations, including offenses enumerated in Title 18 of the United States Code.

2. I submit this affidavit in support of a criminal complaint and application for an arrest warrant charging STEVEN BROWN, with a violation of Title 18 U.S.C. § 1029(b)(2). Based on the facts set forth below, there is probable cause to believe that from on or about January 15, 2019, through on or about August 11, 2019, BROWN did unlawfully, knowingly, and willfully combine, conspire, and agree with one or more persons to knowingly and with intent to defraud possess fifteen (15) or more devices which are counterfeit or unauthorized access devices, affecting interstate or foreign commerce, in violation of Title 18, United States Code, § 1029(a)(3).

3. This affidavit is based on my personal knowledge, and on information provided to me by other law enforcement officers who participated in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint, your affiant has not included each and every fact known to me concerning this investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

4. On or about May 2019, the United States Secret Service ("USSS"), Dallas Field Office, was contacted by the Colleyville (Texas) Police Department, which received information from C.M. regarding a Capital One credit card account that had been established without C.M.'s consent utilizing C.M.'s personal identifying information ("PII"). The USSS began to assist in investigating an access device fraud/identity theft scheme victimizing a number of individuals who had Capital One credit card accounts fraudulently established at Bass Pro Shops/Cabela's stores using their identities to obtain things of value. The co-conspirators, as the investigation revealed, would obtain a victim's PII, use the PII to open a Capital One credit card at Bass Pro Shop/Cabela's utilizing in-store kiosks, and then use the credit cards to make unauthorized purchases. The current actual fraud loss provided by Capital One for the fraud scheme involving STEVEN BROWN and some of the co-conspirators is $166,576.51. To date, BROWN has been identified by other co-conspirators in the fraud

scheme as the person who provided PII and counterfeit driver's licenses to co-conspirators to carry out the fraud scheme.

5.  On May 17, 2019, USSS Task Force Officer ("TFO") Jeff Prater and your affiant interviewed Individual 1 at the Ellis County jail in Waxahachie, Texas. TFO Prater advised Individual 1 of his/her Miranda warnings, which Individual 1 waived and agreed to cooperate with this investigation. Your affiant advised Individual 1 of Title 18 U.S.C. § 1001, which Individual 1 stated he/she understood and agreed to speak with us. During the interview, Individual 1 admitted to manufacturing five (5) counterfeit identification documents in the names of other people, and utilizing the credit cards he/she fraudulently obtained from Bass Pro Shops/Cabela's kiosks to purchase multiple items. Individual 1 stated he/she fraudulently opened the accounts using the following victims' PII: C.M. (Colleyville, Texas), C.H. (Round Rock, Texas), J.R. (Marshall, Texas), J.M. (Pflugerville, Texas), and M.H. (Lakeway, Texas). Individual 1 stated an individual known to him/her as BROWN sent text messages to Individual 1's cellular telephone called "files" that contained individuals' PII. Individual 1 continued to state BROWN would send "codes" through text messages to Individual 1's cellular telephone. Individual 1 stated he/she entered the print "code" sent to him/her in a text message from BROWN at FedEx, which allowed Individual 1 to print a counterfeit paper driver's license and sign his/her name. Individual 1 further stated he/she used the counterfeit paper driver's license at Bass Pro Shops/Cabela's in-store kiosks to open a Capital One credit card using a victim's identity. Individual 1 stated BROWN would send a cheat

sheet to Individual 1's cellular telephone, which included what to do if he/she was questioned at the in-store kiosk when establishing the fraudulent accounts at the various Bass Pro Shops/Cabela's stores. Individual 1 continued to state if Individual 1 was asked about why Individual 1 was using his/her cellular telephone while opening the account, Individual 1 was to say he/she was "dealing with teenagers." Individual 1 further stated that if he/she was confronted about not having a hard Texas driver's license, Individual 1 was to say Individual 1's "purse was stolen and the paper driver's license was all [he/she] had."

6. Individual 1 stated BROWN would send Individual 1 and other co-conspirators to stores around the state to purchase high-end items with the fraudulently obtained credit cards. Individual 1 advised that he/she and other co-conspirators were instructed to deliver the purchased items to BROWN, who would then give the items to Individual 7 in order to sell. Individual 1 stated that upon obtaining the fraudulently obtained credit card from Bass Pro Shops/Cabela's stores, he/she would purchase three (3) $1,000 gift cards. Individual 1 further stated he/she would keep one of the gift cards as payment for opening the fraudulent account, provide the second gift card to BROWN, and the third gift card would be delivered to Individual 6. Individual 1 stated BROWN has a portfolio of illegally obtained credit cards, gift cards, and other items purchased with the fraudulently obtained credit cards by Individual 1 and other co-conspirators inside of his personal residence in Hutchins, Texas. When asked if BROWN had counterfeit paper Texas driver's licenses inside of his residence, Individual 1 stated

BROWN was good about disposing of the counterfeit paper Texas driver's licenses, and that Individual 1 would rip his/her photograph out before Individual 1 threw them away in the trash. Individual 1 advised BROWN also has a laptop computer BROWN leaves at home when he is gone.

7. On June 6, 2019, TFO Jeff Prater and your affiant, conducted another interview with Individual 1 at the Colleyville Police Department. TFO Prater advised Individual 1 of his/her Miranda warnings, which Individual 1 waived and agreed to cooperate with this investigation. Your affiant advised Individual 1 of Title 18 U.S.C. § 1001, which Individual 1 stated he/she understood and agreed to speak with us. Individual 1 provided verbal and written consent to search his/her cellular telephone (Samsung, white in color). During a search of Individual 1's cellular telephone, your affiant discovered BROWN was listed as "Boss" in Individual 1's contacts. Individual 1 voluntarily opened the text message thread between he/she and BROWN and identified the "files," "codes," and "cheat sheets" which BROWN had sent Individual 1 through text messages on the cellular telephone. Below is an example of the "code" sent in a text message from BROWN:

"https://www.evernote.com/l/AqkcFLkjDmBJ35AGsf7da2NtiR40S8lymGU." Individual 1 explained upon clicking on the "code" he/she would open to a "cheat sheet" which contained PII. The subsequent text message from BROWN was a "cheat sheet"

containing the PII of victim T.E.S.'s, noting the victim's phone number, date of birth, zodiac sign, social security number, address, religion, and other identifiers.

8.    Individual 1 stated he/she would take the counterfeit paper driver's license to Bass Pro Shops/Cabela's in-store kiosks and fraudulently open a credit card using the cheat sheet, which contained the victim's PII. Individual 1 continued to state that he/she and other co-conspirators were not always successful at opening the accounts (i.e. due to the victim having theft protection plans such as Lifelock or too small of a bank). Individual 1 further stated when he/she and other co-conspirators visited stores to make purchases with the fraudulently obtained credit cards, BROWN would stay outside in the vehicle. Individual 1 stated if they went to a strip mall, BROWN would stand on the outskirts of the stores. Individual 1 stated that BROWN had purchased a 2013 silver Lincoln SUV, and had registered the vehicle in Individual 1's name. Individual 1 further stated BROWN is currently in possession of the 2013 silver Lincoln SUV. A computer database search revealed Individual 1 has a 2013 silver Lincoln SUV registered in his/her name.

9.    Individual 1 named Individual 2 as one of the co-conspirators in the fraud scheme with BROWN. Individual 1 estimated Individual 2 spent approximately $200,000 in fraudulent purchases. On March 1, 2019, Individual 2 fraudulently purchased items for the amount of $1,103.82 at Walmart using a Capital One credit card in the name of victim D.S. On or about May 15, 2019, your affiant contacted victim D.S. to which he/she stated he/she received a Capital One statement via mail for the amount of

$14,000, and did not open a Capital One account or provide anyone consent or permission to use his/her PII.

10. On or about May 2019, investigators discovered that on September 28, 2018, Individual 2 had fraudulently purchased a vehicle for $26,590.00 using a counterfeit paper Texas driver's license in the name of S.T. Victim S.T. provided Rockwall County Sheriff's Office with an affidavit of fact stating someone had purchased a vehicle using his/her identity.

11. On or about May 2019, investigators obtained surveillance video footage of Individual 2 utilizing a fraudulently obtained credit card to rent a vehicle from Avis car rental using C.P.'s identity. C.P. informed the Harris (Texas) County Sheriff's Office that a Cabela's/Bass Pro Shop's credit card was opened in his/her name and the charges totaled $20,000. C.P. further stated he/she did not give anyone authorization to open an account in his/her name.

12. On May 15, 2019, your affiant contacted victim R.W., to which he/she stated he/she did not open a Capital One account nor did he/she provide anyone consent or permission to use his/her PII. R.W.'s spouse advised they had received a credit card statement from Capital One in the amount of $14,510.95 and provided documentation. Investigators learned that a charge had been made to the Capital One credit card at Bachendorf's Jeweler. Your affiant contacted Bachendorf's, who provided an image of Individual 2 inside of the store attempting to purchase a Rolex in the amount of $13,400 utilizing a counterfeit paper Texas Driver's License and Capital One credit card in the name of R.W.

13. On June 18, 2019, TFO Jeff Prater and your affiant interviewed Individual 4 at the Dallas County Jail. TFO Prater advised Individual 4 of his/her Miranda warnings, to which Individual 4 waived and agreed to cooperate with this investigation. Your affiant advised Individual 4 of Title 18 U.S.C. § 1001, which Individual 4 stated he/she understood and agreed to speak with us. During the interview, Individual 4 stated that upon being released from jail in January 2019, Individual 4's friend "Franchise" gave him/her a place to stay, and asked Individual 4 if he/she "wanted to make money." Individual 4 identified "Franchise" as BROWN and stated BROWN provided Individual 4 with a cellular phone and sent him/her text messages containing PII, which included victim names, dates of birth, driver's license numbers, addresses (previous and current), workplaces, phone numbers, credit scores, marital statuses, and spouses names. Individual 4 admitted to fraudulently opening two (2) credit cards, and explained that he/she and BROWN would go to Bass Pro Shops/Cabela's stores, where BROWN would provide Individual 4 with a counterfeit paper Texas driver's license matching the PII in the text messages previously sent by BROWN to Individual 4. Individual 4 stated that BROWN would stay in the car while Individual 4 went inside to fraudulently obtain credit cards at the in-store kiosks, utilizing the identifiers in the text messages. Individual 4 stated he/she would then purchase gift cards to give to BROWN along with the fraudulently obtained credit cards. Individual 4 stated that BROWN would give him/her – as payment for fraudulently obtaining the credit cards – $1,000 in cash, gift cards, or items that could be sold (i.e. tools) in return for fraudulently opening the accounts. Individual 4 further admitted to purchasing $4,999 in British pounds and giving the

foreign currency to BROWN. Individual 4 provided your affiant and TFO Prater verbal and written consent to search Individual 4's cellular telephone which was located in his/her personal property. During a search of Individual 4's cellular telephone, your affiant located BROWN's contact listed as "Fran" (short for "Franchise"). Individual 4 stated he/she had recently bought a new cellular telephone, and there would not be messages between he/she and BROWN on the cellular telephone Individual 4 gave consent to search.

14. Individual 4 corroborated Individual 1's statement when Individual 4 explained BROWN would stay in the vehicle while co-conspirators were in stores carrying out the fraud scheme. For example, Individual 1 and Individual 4's statements were corroborated in an investigation involving a similar offense in April 2018, when Individual 4 was arrested for using victim PII to obtain a credit card at the Nebraska Furniture Mart in The Colony, Texas. When Individual 4 was arrested in the April 2018 incident, he/she indicated that BROWN provided Individual 4 with a counterfeit Texas paper driver's license and had remained in the vehicle in the parking lot of the Nebraska Furniture Mart while Individual 4 committed fraud inside of the store. Officers subsequently located and arrested BROWN inside of a vehicle in the Nebraska Furniture Mart parking lot.

15. On July 10, 2019, your affiant obtained a federal vehicle tracking warrant from U.S. Magistrate Judge Rebecca Rutherford, in the Northern District of Texas, for BROWN's 2013 silver Lincoln SUV bearing Texas license plate LRM5271 (VIN

#2LMDJ6JK4DBL25224). On July 12, 2019, TFO Jeff Prater, SSA Jason Boswell, and other law enforcement agents from the USSS and Colleyville Police Department located BROWN's 2013 silver Lincoln SUV, and TFO Prater successfully installed a vehicle tracking device on the vehicle.

16. On July 12, 2019, at approximately 6:50 p.m., BROWN's 2013 silver Lincoln SUV was located via tracker at a Costco, located at 8055 Churchill Way, Dallas, Texas. On July 14, 2019, Individual 8 returned to the store and filled out an instant credit application. The manager of Costco telephonically contacted TFO Prater and informed him that Individual 8 filled out an instant credit application for a Visa credit card and successfully opened a Costco credit account in the name of victim G.D. TFO Prater contacted victim G.D., who stated he/she did not give anyone consent or permission to use his/her II. The manager further advised Individual 8 subsequently purchased three (3) $500 cash cards, an Apple iPad, an Apple laptop computer, and other miscellaneous items, totaling $4,449.49. On July 15, 2019, TFO Prater and your affiant responded to the Costco and spoke with an employee who provided surveillance footage from July 12th, which revealed the 2013 silver Lincoln SUV parked in the furthest corner of the parking lot. An individual later identified by Hutchins (Texas) Police Department as Individual 8, exited the Lincoln SUV, walked inside of the store, and briefly glanced at the membership counter before returning to BROWN's Lincoln SUV.

17. On July 13, 2019, BROWN's 2013 silver Lincoln SUV was repossessed from his residence and transported to Reid and Reid Recovery. On July 15, 2019, TFO Prater and your affiant responded to Reid and Reid Recovery, where the manager

provided verbal and written consent to search the vehicle. During a search of the vehicle, TFO Prater and your affiant recovered a Texas liability insurance card for the 2013 silver Lincoln SUV listing BROWN and Individual 2 as the included drivers for that vehicle, $105.00 in cash wrapped inside of a pawn ticket issued from First Cash Pawn #8, a pawn ticket from Cash Money Pawn Shop in the amount of $700 for (2) diamond rings, a PayPal credit card embossed with BROWN's name, a prepaid VISA card with no name, a Calvin Klein wallet containing BROWN's Texas driver's license, a FedEx card, a paper Texas driver's license containing no photograph and other miscellaneous items. The aforementioned items were seized as evidence placed into evidence at the Colleyville Police Department.

18. Between July 25-26, 2019, BROWN's 2013 silver Lincoln SUV was observed via the tracking device in Houston, Texas, at various retail stores including: FedEx, Nordstrom, Home Depot, Super Target, Best Buy, Costco, Fry's electronics, and Sam's Club. USSS agents from the Houston Field Office responded to the aforementioned locations and obtained surveillance footage, account applications, and receipts of purchases. Surveillance footage from Nordstrom revealed BROWN's silver 2013 silver Lincoln SUV in the parking lot, and a co-conspirator, later identified as Individual 9, exiting the passenger side of BROWN's vehicle, walking inside of Nordstrom, and attempting to apply for in-store credit. The video footage further revealed Individual 9 looking at his/her phone while entering information into the point of sale terminal, and after being denied for the in-store credit, returning to BROWN's vehicle. BROWN's 2013 silver Lincoln SUV was then subsequently observed via

tracking device driving to FedEx, where Individual 9 entered FedEx, and proceeded to the self-service area which allows for copying and printing. BROWN's 2013 silver Lincoln SUV was then observed via tracking device returning to Nordstrom, where Individual 9, using a paper driver's license, successfully opened an in-store line of credit in the name of victim J.B., and purchased cologne and perfume in the amount of $909.30. Your affiant contacted victim J.B., who stated he/she did not give anyone consent or permission to use his/her PII. BROWN remaining in the vehicle while Individual 9 committed fraud inside of Nordstrom corroborates statements from Individual 1 and Individual 4 regarding BROWN remaining in the vehicle while co-conspirators committed fraud. BROWN's 2013 silver Lincoln SUV has been observed multiple times at Individual 9's residence in the Northern District of Texas.

19. On July 19, 2019, your affiant observed Individual 6's vehicle at BROWN's residence in Hutchins, Texas. Your affiant subpoenaed the call detail records of BROWN and other co-conspirators from January 2019 to July 2019. Subsequent to a review of the data, your affiant determined there were 3,329 phone calls between BROWN and Individual 6. Approximately 74% of Individual 6's communication via cellular telephone was with BROWN.

20. On August 11, 2019, Individual 8 was arrested by the Lewisville (Texas) Police Department at Costco in Lewisville, Texas. During an interview with the Lewisville Police Department, Individual 8 admitted to entering Costco and filling out an in-store credit application using the identity of victim S.K. Upon receiving approval for the in-store credit, Individual 8 fraudulently purchased $3,440.70 worth of merchandise

using the newly printed fraudulent credit card in the name name of S.K. Individual 8 further admitted to manufacturing the counterfeit paper driver's license using a computer program, adding his/her photograph to the template, and printing it out to use. Individual 8 further informed the officer Individual 8 had been stealing from major department stores for approximately eight (8) months. During a search of Individual 8's person following the arrest, an officer located three (3) counterfeit Texas paper driver's licenses in the names of victims B.H., S.K., and R.S., bearing Individual 8's photograph, two (2) Costco membership cards in the names of victims S.K. and R.S., bearing Individual 8's photograph, (2) temporary Costco membership cards in the names of victims S.K. and R.S., a Costco membership application in the name of S.K., and a Lowe's temporary credit card receipt bearing B.H. as the customer name with a credit line of $1,500. The aforementioned items were seized and placed into evidence at the Lewisville Police Department. Victims S.K. and B.H were contacted by the Lewisville Police Department, both of whom stated they did not provide anyone with consent or permission to possess or use their PII.

## CONCLUSION

Based on the forgoing facts and circumstances, there is probable cause to believe that between January 2019 and July 19, 2019, BROWN, in concert with and aided and abetted by others, violated Title 18 U.S.C. §§ 1029(a)(3) and (b)(2).

*[signature]*
KENNON HENDERSON
Special Agent, USSS

Dallas, Texas

Sworn to and subscribed to before me this __18__ day of September, 2019.

_____
REBECCA RUTHERFORD
United States Magistrate Judge
Northern District of Texas

AO 442 (Rev. 11/11) Arrest Warrant

~~SEALED~~

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | | |
|---|---|---|
| United States of America<br>v.<br>Steven Brown<br><br>_____<br>*Defendant* | ) ) ) ) ) ) ) | Case No. 1:19-m-600<br>**3-19MJ814-BT** |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Steven Brown                                                                                        ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

on or about January 15, 2019, through on or about August 11, 2019, Brown did unlawfully, knowingly, and willfully combine, conspire, and agree with one or more persons, in violation of Title 18 U.S.C. § 1029(b)(2), to knowingly and with intent to defraud possess fifteen (15) or more devices which are counterfeit or unauthorized access devices, affecting interstate or foreign commerce, in violation of Title 18, United States Code, § 1029(a)(3).

Date: 9.11.19                                                                              *[signature]*
                                                                                                       *Issuing officer's signature*

City and state: Dallas, TX                                              Rebecca Rutherford, U.S. Magistrate Judge
                                                                                                         *Printed name and title*

---

**Return**

| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
|---|
| at *(city and state)* _____. |
| |
| Date: _____                                                                    _____<br>                                                                                                          *Arresting officer's signature*<br><br>                                                                                                          _____<br>                                                                                                          *Printed name and title* |